Good morning. May it please the Court, my name is Dale Bache. Michael Burke and I are with the Office of the Federal Public Defender for the District of Arizona. We represent Mr. Rossi in these proceedings. I wish to reserve the balance of my time for rebuttal. The integrity of the death penalty in this case is in question for at least three reasons. First, the trial judge and defense counsel failed to recognize that the medication Mr. Rossi was receiving during trial may have rendered him incompetent. Second, the investigation for the sentencing hearing was inadequate. Counsel failed to discover that Mr. Rossi suffers organic brain damage as a result of prolonged use of cocaine and other stimulants. And third, Mr. Rossi was sentenced to death by a judge who was hiding his addiction to marijuana at the time he presided over Mr. Rossi's case. Any one of these issues, standing alone, gives this Court grounds to order that a writ be issued or remand for further evidentiary development. Together, the cumulative effect of these errors demand that relief should be granted. I'd first like to discuss the issue relating to Judge Marquardt. Before you start, counsel, there has been some dispute as to whether this is a case subject to AEDPA or not. And I think for the purposes of your argument, you should assume that it does apply. Your Honor, I think that's sort of unfair. The district court made a ruling, and for six years we have been proceeding in this matter under the pre-AEDPA standards. On the eve of oral argument, the appellee submitted. Well, I understand all that, but I was very aware of that case long before it was called to our attention by the U.S. attorney. I'm not foreclosing your argument, but I just think for the purposes of your case here today that it's important that you be able to argue under the AEDPA standards. I will do my best. I agree with Judge Fletcher in that recommendation. I will do my best. However, I would ask that the Court consider asking for supplemental briefing on this matter, since the issue was not presented in the appellee's brief. This Court is familiar with the issues related to Judge Marquardt, the judge who sentenced Mr. Rossi and two other men in Arizona to death. There are some additional facts in this case that should give this Court pause. First, there is a temporal connection between the time that the judge sentenced Mr. Rossi and the judge was first arrested, a period of one month. Next, the judge slept through part of the hearing. Also, Mr. Rossi was a drug addict and offered his addiction as mitigation. Judge Marquardt was hiding his addiction, and because of his own dependency, he did not give adequate weight to the expert testimony concerning the effects of the addiction. And an interesting twist in this case, when Judge Marquardt was facing sentencing in his case, he retained the same expert that Mr. Rossi relied upon to attempt to mitigate his sentence. And finally, Judge Marquardt found that Mr. Rossi could not be rehabilitated. He relied on an incident in prison where Mr. Rossi was written up for possession of marijuana. It turns out that the, quote, green leafy substance did not, testing of the green leafy substance did not indicate that it was marijuana, so it was inappropriate for the judge to find that it was marijuana. Counsel, this is Judge Rockin. Am I correct in my understanding that the Arizona Supreme Court affirmed the death sentence in this case as a matter of chronology after it had considered the disciplinary disbarment, et cetera, implications of his drug convictions and searches? Just to make sure I heard your question, Judge Hawkins, are you asking if the Arizona Supreme Court affirmed the second resentencing after Judge Marquardt had been disbarred? That's my question. Yes, the Supreme Court did review Mr. Rossi's sentence after Judge Marquardt was disbarred. However, appellate review is not a procedural safeguard to make a biased judge constitutionally acceptable. The United States Supreme Court said that in Ward v. Village of Monroeville. The defendant is entitled to a neutral and detached judge in the first instance, and the appellate procedure is not deemed acceptable because the State eventually provides an impartial adjudicator. Mr. Page, the Ward case involves the possibility of corruption, self-dealing. The mayor was both the beneficiary of the fines and also the person who would review the fines or determine the fines. That's different from competency, isn't it? What I'm saying is, if AEDPA applies, how do you establish a due process principle in the Ward case which applies to corruption and self-dealing? How do you extend that to a due process principle that applies to competency? Well, it's competency and bias, Your Honor. Will the bias be because of the addiction? Yes. Address yourself to the competency. Well, Judge Marquardt was engaging in criminal activity while he was on the bench. He was smoking marijuana. That was a crime, and that demonstrates more than an appearance of bias. There's a reasonable inference that Judge Marquardt had a compensatory or camouflaging bias. Don't you think that would have been apparent to the Arizona Supreme Court? I'm sorry, Judge Hawkins, could you repeat? Yes. Don't you think what you just said would be apparent to the Arizona Supreme Court at the time they affirmed the death sentence? I'm not hearing what Judge Hawkins is saying. Neither am I. We're having trouble, Mike. Can you get right up to the mic? Sure.  I think so. Okay, I'll try. My question, Mr. Bates, is this. to the Arizona Supreme Court when they affirmed the death sentence? That is, that they were dealing with a drug-addled judge who was smoking marijuana at night on weekends and then coming to court and sending people to prison for the same thing? We don't know, Your Honor. There's nothing in the record. In addition, Mr. Rossi should have had the opportunity to further develop the facts relating to this, and he attempted to do that in the post-conviction proceedings in state court. But to answer your question, there's nothing in the record, and I don't know that we could assume that the Arizona Supreme Court took that into consideration. Well, it certainly was no secret at the time, and it's not like this is some huge bench where the name would escape attention. This was headline stuff all over Arizona. You just have to believe the Supreme Court knew about it. Let me move to another question I have. Are you hearing me all right? It's kind of choppy, Judge Hawkins. Are you speaking into a speakerphone? I'm using a handset, and I've got it close to my mouth. Is that better? That's better. I have a related question, and that's on the sleeping. Was there anything indicated on the record in terms of an objection or a notation about sleeping during the sentencing hearing? There was not. Is there anything from a cold reading of the record that would suggest that Judge Marquardt wasn't alert during the sentencing hearing? There is not. Let me ask this, counsel. When we're making a determination as to competency, is that a legal question or is it a mixed fact and law question? Well, I think under the Bracey case by the Supreme Court and the subsequent Seventh Circuit decision, I think it is a mixed question of fact and law. The two other men who were sentenced to death by Judge Marquardt have had their death sentences vacated on other grounds. Is that part of the record? Yes. In this case, by reference to the Summerlin decision. In the Summerlin decision, the decision by the opinion by Judge Kuczynski cautions us not to paint with a broad brush but to require with respect to Judge Marquardt that there be facts which if established as to the particular actions or inactions of Judge Marquardt were prejudicial to the Petitioners. Could you please address once again the question I asked you a moment ago. So is there any Supreme Court case which deals with competency as a due process, competency of the initial tribune who hears the case as a due process requirement? I believe Toomey, Murchison, Bracey, Aetna-Leif all discussed the due process issue. And if I may address Judge Kuczynski's concerns in Summerlin, I think we met his concerns here because one of the things that Judge Kuczynski wrote is did the judge sleep during the proceedings? And we provided evidence through the declaration of Mr. Rossi's investigator that Judge Marquardt fell asleep during the sentencing hearing. The second issue I would like to talk about is ineffective assistance of counsel at sentencing. Counsel at the second resentencing did not conduct an adequate investigation to prepare for that hearing. There is no excuse for his failure. He did not interview family members, and he did not discover that Mr. Rossi suffered organic brain damage. And there were tantalizing indicators that were available to counsel that Mr. Rossi had organic brain damage. He had a long history of drug abuse, especially stimulants and cocaine. He acted out during the trial. In fact, the jail psychiatrist at one point said that Mr. Rossi may need a neurological assessment, and that's referenced on page 22 of our substitute excerpts of the record. Also, the medications that Mr. Rossi received while in custody before trial and during trial, all of these are indicators that the lawyer at sentencing should have asked for a neurological assessment. And had he done so, he would have learned that Mr. Rossi had permanent brain dysfunction as a result of a 15-year addiction to cocaine and psychosis at the time of the crime. He had no ability to plan, deliberate, or reason. And that's noted in the declaration by Dr. Strickland at excerpt 532, 534, and 35. In State post-conviction proceedings, counsel ---- The ineffective assistance of counsel was in failing to present mitigating factors at the sentencing, or are you claiming that there was ineffective assistance of counsel in failing to show that Mr. Rossi could not deliberate sufficiently to have committed the crime? Is it a guilt matter, or is it a sentencing matter? It's purely a sentencing matter, because this occurred at the second resentencing hearing. In the State post-conviction proceedings, Mr. Rossi claimed that counsel failed to develop mitigating evidence concerning his mental problems generally and at the time of the crime. Rossi requested the appointment of experts during the State post-conviction proceedings. That request was denied. He also requested an evidentiary hearing. That request was denied. When the case moved to the district court, Mr. Rossi sought to expand the record, ask for discovery, and an evidentiary hearing. All those requests were denied. So the facts supporting this claim have not been fully developed. Mr. Rossi attempted to do so in the State court as well as in the Federal court. The district court did not properly consider Rossi's sentencing claim of ineffective assistance of counsel at sentencing. It believed, like the appellees, that organic brain damage was being forth as a separate claim for relief. It was not. It was offered to support the prejudice prong of Strickland. In this case, there is a reasonable probability to undermine the confidence in the outcome. And a perfect example to demonstrate that is the point that the Arizona Supreme Court made in Rossi 3. In upholding the finding against leniency, the court noted, Rossi produced evidence focusing on his drug addiction, not on any alleged mental illness or intoxication. So the Arizona Supreme Court was looking for more. And the following year, in the Stewart decision, the Arizona Supreme Court held that trial counsel failed to, or the trial court, I'm sorry, failed to find that the organic brain damage that was offered in mitigation was significant. But, counsel, wasn't there a report from Dr. Power that there was organic brain damage, minimally impaired brain function, left lobe, already in the record? From Dr. Power? Well, that's a sentencing hearing. In other words, on your prejudice prong of Strickland, right? Yes. If there was already evidence in the record which the court could consider of organic brain damage, then the prejudice is sort of watered down. I believe that Dr. Power was a psychologist. And if the Court could direct me to the record site. I don't have that page. I just have a note taken. Okay. The evidence offered in this case supports a sentence less than death. When looking to the totality of the evidence, this is enough to tip the scale during the reweighing process. The existence of mental impairments and the failure to find them are grounds for finding prejudice or remanding this matter for an evidentiary hearing. The final issue that I would like to address is Mr. Rossi's competency to stand trial. Under Odle and Miles, a Petitioner cannot waive his right to a competency hearing. There is evidence in the record that Rossi was not competent, and this should have prompted the trial judge to hold a hearing. He was on high doses of antidepressants and sedatives from his initial incarceration until the eve of trial. There was an abrupt cessation of all medications, and Mr. Rossi had a reaction to that. There was a suicide attempt, and there were a number of phone conferences between the judge and one of the jail psychiatrists concerning his medication. At the beginning of the trial, Mr. Rossi was medicated. This time, though, rather than keep him on the regime that was initially established, the ---- Kennedy, this is your claim number four, right? That there should have been a competency hearing. Indeed, the State court should have undertaken a sui spondi. Yes. Now, wasn't that procedurally defaulted because it wasn't brought up in the Arizona Superior Court? Well, under Odle and Miles, from two decisions from this Court, a Petitioner cannot waive his right to a competency hearing. So we believe that the district court was in error in making that determination. But it wasn't brought up in the Arizona State habeas case. The competency issue was brought up. It was. It was brought up as an Eighth Amendment issue, not as a Fifth Amendment issue. It was brought up as a Fifth, Sixth, and Fourteenth Amendment issue. How is competency brought up as an Eighth Amendment issue as where it's not brought up as a Fifth and Sixth Amendment issue? The Eighth Amendment has to do with unusual, cruel, unusual punishment, right? That's how it was raised in the post-conviction perspective. Do you think that was unusual? Well, technically it wasn't, but I think in this case it doesn't matter because this right to a competency hearing is a personal right that Mr. Rossi must waive. And again, under this Court's decisions, this claim cannot be waived. And if there's a ---- Didn't the judge hold some hearings and have Mr. Rossi present and ask him how he was feeling, and he said he had some headaches and some stomach upset and some diarrhea and that was all he said was wrong with him as a result of not taking those medications? There were hearings concerning what kind of medications he was receiving. However, the judge did say, and I think it's on page 11 or 22 of the record, that he may have to hold a full-blown hearing on this matter. You're not claiming that there was an error in the State trial court not sua sponte holding a competency hearing? We are. Oh. So it's not only ineffective system of counsel. It's also the fault of the State court not sua sponte. Correct. And what was the basis for the court to realize that this person was not competent when he complained of headaches, stomach upset and diarrhea? Well, the court was aware of the medication that Mr. Rossi was receiving. And we're talking about antidepressants, sedatives and Thorazine, which is an antipsychotic and a very sedating drug. The court observed some bizarre behaviors by Mr. Rossi. The court commented that he was causing a bit of a disturbance in the courtroom. Mr. Rossi was not controlling his emotions. When he was on Thorazine, he was lethargic. He had difficulty with word choices during his testimony. So there's enough in the record for the trial judge to be concerned about whether Mr. Rossi was competent. What he should have done was held a hearing and determined, allow the medical Mr. Rossi to stabilize before proceeding. I would like to reserve the balance of my time for rebuttal. Thank you. May it please the Court. My name is Kemp Catani. I'm an Assistant Attorney General from the State of Arizona. I'm representing respondents in this matter. I would like to start out by pointing out what I think is a significant misrepresentation of the facts in the reply brief, and it goes to the question that you asked regarding Dr. Powers. At page 14 of the reply brief, Rossi acknowledges that he was examined by a neurologist, Dr. Michael Powers, prior to trial. The reply brief states, however, quote, as a threshold matter Dr. Powers examined Rossi for the limited purpose of determining whether he suffered from epilepsy or some other seizure disorder. It's in the record as to what his qualifications were. He was a neurologist. He's a neurologist, yes. And his report is Exhibit M to the Post-Conviction Relief, in the Post-Conviction Relief Proceeding, and he's quoted, I don't have the quote right in front of me. He is a neurologist, and his report states, As I review Dr. Enos's report, the clinical history and examination, and the electroencephalogram, I can find no evidence of epilepsy or of any other neurologic condition, with the exception of possible migraine headaches. I can find no evidence of a medical condition which would have allowed him to perform activities without subsequent recollection or which would interfere with his ability to distinguish right from wrong. This is significant because Rossi's counsel has portrayed this as a case of a man with organic brain damage who has not provided mental health experts to help him develop his case. In fact, Rossi has an IQ of 119, which places him in the upper ten percentile of the adult population. He went to college on an academic scholarship and worked at responsible jobs. He was examined by at least seven mental experts before the third sentencing hearing. I think the thing that troubles me, counsel, and I'm going to want you to address it, is the roller coaster pattern of treatment of him before trial, during trial, and after trial, in respect to the medications that he was given. It's a very disturbing pattern. Well, I think the best indication of his competency at the time of trial is his own trial testimony. Mr. Rossi testified, and I think if you'll read his testimony, that testimony encompasses 84 pages of transcripts, and I think that provides a very clear indication that he was not brain damaged or otherwise incompetent. He certainly responded appropriately and was sparring with the prosecutor. I think it's clear if you'll read that. I think that's the best indication. Additionally, prior to trial, there was a preliminary prescreening for a Rule 11 evaluation by Dr. Leonard Garcia Buñuel. That report states that there's no previous history of mental disorder, although he's abused drugs for a long period of time and in rather high doses. But then Dr. Buñuel states, there is no suggestion of even the remote possibility that he is now or has been at any time since his incarceration affected by any defect or disease of the mind, which might negatively influence his ability to comprehend the nature of the proceedings against him or to assist counsel in the preparation of his defense. I think if you'll also look at the phone calls where Dr. O'Connor is consulted, and I think you'll see very coherent statements by Rossi complaining that he's not feeling well, but I think those questions are answered. And Dr. O'Connor agrees to change the medications at a noon break. I think that's reflected in the April 16, 1984, transcript. Dr. O'Connor had indicated that in the past Rossi had stopped taking medication and that it didn't really have that much effect on him. O'Connor says, in our opinion, he doesn't have a psychiatric disorder. Our dealings with Mr. Rossi in the past have been that he's been very addicted to very strong medications for a very long time and that he has in the past prefabricated some problems, some symptoms in an effort to get the medication. Dr. O'Connor agreed that the medicine wouldn't hurt Rossi and agreed to give him some at noon. And O'Connor is one of the doctors that Rossi called to testify at sentencing. The judge at one point where they had an in-camera discussion, I think the lawyers and Rossi and so forth were present, he said that this is a serious situation and I cannot ignore this request. I've got either to settle it over the phone or I've got to set it for a full-blown hearing with everybody present. So he was certainly evidencing some concern, but apparently thought that his conversations by telephone were enough to allay his concern. Do you have the date of that transcript? It's ER 14, but I don't have the date. It was mid-trial when he was asking. Right. And I'm just wondering, I'm not sure if that's before or after the portion that I just related where they got Dr. O'Connor on the phone and Dr. O'Connor agreed to give him the medication. So I think it shows that the trial court took it seriously and did consider it. And, again, I think if you look to Rossi's testimony, I think that's the best indication of his competency in this case. I'd like to address the issue of Judge Marquardt. I think the issue is resolved by virtue of the Arizona Supreme Court's independent review of the case. This wasn't just a review, an abuse of discretion review of Judge Marquardt's ruling. It was an independent review. They independently considered the aggravation and the mitigation. And I think under Clemens v. Mississippi, Cabana v. Bullock, Spaziano, and the profit decisions out of Florida, I think that independent review cured any conceivable error. But I would like to take a step back. Let me ask you the same question I asked opposing counsel. Is the determination of competency a mixed fact in law, or is it matter of law? I think the question of whether Marquardt was competent is a factual question. And I think that factual question was resolved by the state courts. Do you have any citation for that? I don't here off the top of my head, other than it's a determination of whether someone is having mental difficulties. I'm not sure how that could be anything other than a factual determination. Competency has legal definitions, and one would look to see whether those are correct. I think you're right, that it certainly would be. To the extent there's a question, and then how competent do you need to be, I guess, becomes the legal issue. So I would agree that it's a mixed question. And I think it's important to take a step back and consider the affidavit that was provided. In the brief, Rossi posits that Marquardt did not just nod off after lunch, this was slumber. And I think Judge Hawkins makes a good point. Would you repeat yourself? I didn't hear what you said. This is slumber? That's the allegation in the brief, that Marquardt did not just nod off after lunch, this was slumber, is what has been posited in the brief. And Judge Bee and Judge Hawkins make a good point that there is nothing in the record that supports this allegation. And it's important to keep in mind that this was the third sentencing, and defense counsel asked Judge Marquardt to consider everything primarily in the second, at the first two sentencing proceedings. There was a record from those proceedings, and it's clear that the parties and Judge Marquardt agreed that he would do that. The actual transcript of the hearing where Marquardt supposedly slept is from May 18th, 1988. And the allegation is that he slept after lunch. The pages involved are from pages 31 to page 118. And if you look at those pages, there's absolutely no indication anywhere that he could have been sleeping at that point. Marquardt speaks on 32 of the 87 pages. He speaks on page 31, on page 32, on page 40, on page 41. And sometimes when he's speaking, he's obviously referring to testimony from prior pages. He speaks on page 43, page 44, page 46, page 55, page 60, 66, 67, 71, 78, 79, 80, 88, 96, 97, 101. It goes on. I could read all of the sites. And if you look at that, he's responding appropriately. Every time there's an objection, he responds. As soon as a witness finishes, he asks the other side if they're going to proceed. Rossi and his counsel have had how many years now to develop the claim beyond simply an affidavit saying that Marquardt was asleep. There's no indication when was he asleep. They could have looked at that, at those 87 pages, and said it looks like he's sleeping at this point. And I would submit if you read those pages, you'll come to the conclusion that there's no possibility that Marquardt was sleeping. And this was a claim that was not found to be precluded in the state post-conviction proceeding. And, in fact, the state court says the independent review by the Arizona Supreme Court takes care of any error in any event. But the state court also says there is nothing in the record to substantiate the claims against Marquardt. Are you saying that what bars Marquardt, what bars Rossi now is that he failed to make a or his attorney failed to make a motion in the sentencing hearing saying, Your Honor, I'd like to move that you wake up? Well, I think that's part of it. You can see that if somebody, if a judge is considering levying the death penalty, it's a tad undiplomatic to make a motion that a judge wake up. I would agree, but certainly I think you would expect that someone would at least ask a question or say, Judge, Judge. It seems like there would be some indication. And even if we're not requiring him to make the objection at that point, the state court did not find this claim precluded, considered this affidavit at the post-conviction relief proceeding, and nonetheless said there's no, there's nothing in the record to substantiate the claims against Marquardt. So even without an objection at the time, and I would submit if he's actually falling asleep, if this was slumber, they should have. If under claim 33 of the petition, which is the one we're talking about, there is the allegation that Marquardt was addicted, which means that he had a craving for and use of the marijuana, and that as a result of that, he did not listen to the testimony which was introduced as mitigating testimony, and you have the two affidavits, one of the petitioner, which is self-serving, as all evidence is, and the one of the investigator. Doesn't that create an issue of fact for further investigation so that at least at an evidentiary hearing, Marquardt can be subpoenaed and called to testify? I don't think it does absent some indication that Judge Marquardt was impaired. I think you would have some indication. We've got two affidavits that he was asleep. But what I'm suggesting is those are facially incredible, and I think that's the finding. That's the finding by the trial court and the Arizona Supreme Court in affirming the denial of post-conviction relief. And you say that under AEDPA, we have to give deference to that finding. Yes, I certainly would agree with that. Unless it's objectively unreasonable. That's correct. And I think if you read those 80-some pages of transcripts, I don't think you can say that that was objectively unreasonable. Counsel, I think you maybe misspoke yourself. There is evidence that Marquardt was impaired. The question we're talking about now is was he sleeping. What effect did the impairment have on him? Well, and even with ñ I'm not sure that there's evidence that he was impaired. There's evidence that he took marijuana during this period of time. Whether he was actually impaired during any of the proceedings against him I don't think has been established because there is nothing that we can point to, nothing that has been pointed out that shows he didn't understand the question. His speech was slurred. So I guess I would disagree that there's evidence of impairment. Well, there's certainly evidence of addiction. I would agree that there's evidence of addiction. We also know what some of the effects of addiction to marijuana are. So maybe you and I are quibbling over nothing, but I don't think it's accurate to say that there was no evidence of impairment. Well, I would agree that we can certainly ñ that there is evidence of an addiction and whether that ñ and how much that impaired him certainly is an open question. But I would submit that it isn't really that much different than anything that would affect a judge, whether it's going through a divorce, whether it's having a child with drug problems or just a child who's struggling or any kind of illness in the family. If we're going to open it up to that kind of inquiry, I think it would be extremely problematic. And I think you do have to focus on is there any indicia during the proceedings in court that show that this judge is impaired in any way. Counsel, this is Judge Hawkins. Can you hear me all right? Yes. It's very hard in my mind to slice impairment away from bias. And the things that you just indicated about having problems with children at home and that sort of thing are the same very things that would cause an ordinary judge to recuse himself or herself from hearing a case. Does that have any impact on our consideration of the bias issue? Well, I think if it were a case involving where the crime was committed against a child, I guess I'm not completely clear on the link that you're making. The bias, in my view, is I'm not following how Judge Marquardt's addiction to marijuana would necessarily make him biased one way or the other against the defendant. And counsel, for Mr. Ross, he has indicated that Judge Marquardt made a finding that there was marijuana, that he had a violation involving marijuana when the lab said it was not marijuana. I don't think that accurately reflects the record. Do you agree that this is a harder case in terms of the imposition of the death penalty if the sentencing judge had accepted the mitigating factor of the impact of drug use? That it's a harder case? Yes, a harder case to justify the imposition of capital punishment. It's certainly something that the judge would consider as part of the weighing and balancing.  And you don't think there's a due process right to have a drug-free judge consider an issue like that? No, I don't. So a judge who was involved in sexual harassment of subordinates, it would be okay for them to reject that as a factor in a sentencing case? Well, I don't know that it was rejected as a factor here. And actually, the drug impairment, I think, was cited as a mitigating factor. So I guess that's, Judge Marquardt did find that Rossie had a drug addiction and found that to be a mitigating factor. So I guess I'm not certain that that was, in this case, Judge Marquardt accepted that, as did the Arizona Supreme Court. Counsel, he went on to find that this guy couldn't be redeemed, that he didn't have the capacity for rehabilitation. Now, he himself was drug addicted, and he's thinking to himself, I can't get off the drug. Is that something that suggests a bias? Well, to the extent it does, I guess I would go back to the Arizona Supreme Court. Obviously, didn't have that bias and reached the same conclusion. Judge Marquardt's conclusion regarding rehabilitation, I think, stemmed from Rossie's prison record, where he had several write-ups. However, the Supreme Court had sent it back on the previous occasion, saying that he did have the capacity for rehabilitation. So then, when it comes to them again, they say, well, they found that he had marijuana in his cell. This is clearly not right. Are you saying that it's not right that they found marijuana in his cell? Yeah. See, that's what I was going to point out. The page that's cited, I believe, is 39 in the transcript that's in the supplemental excerpt of record. If you look at the previous page, page 38, it shows that Rossie was found guilty of a violation of possession of a non-prescription narcotic drug that was a cigarette with a green leafy substance. I think the question that's asked, it was submitted to the lab, was it marijuana, was it submitted to the lab, is that what the report says? I think that just shows that that's not on the prison write-up, the lab report. But there's a clear finding that Rossie was guilty of possessing contraband, a non-prescription narcotic drug that was a cigarette with a green leafy substance. So I would disagree that. Well, that was a finding in the administrative hearing in the jail, but nobody else has found that it was narcotic. It was a green substance. Right. But the point of the... But what could it be if it's not marijuana? Well, that's my point. I don't think this record shows. This record, I think, just shows that the lab report is not, the results from the lab are not there. It doesn't say the lab tested it and said that it is this, it is not marijuana. I think it's just a question of the lab results are not part of the write-up. And, again, the point that this was being used for was that Rossie had violations while in prison, not that the violation was marijuana. It was write-ups and violations offered to counter what Rossie had offered as potential for rehabilitation. And I think this would be the Arizona Supreme Court, you're correct, sent the case back to the trial court, directing them to consider that. But then the Supreme Court did not say you must give it this way and, in fact, ordered a new sentencing. And the Supreme Court had a chance to review that after Judge Marquardt listened to testimony, listened to testimony about the write-ups. And Judge Marquardt said that he found his prison record to be neutral, that it didn't support his claim that he had potential for rehabilitation. And the Arizona Supreme Court had that in front of them. Well, that's odd because what the Supreme Court said in justifying Ben affirming the sentence was that there was evidence which was not neutral. I'm sorry, evidence that was? There was evidence that it was said that it was not neutral and that Marquardt had found things about the prison sentence which would, his prison behavior that would suggest that he couldn't be rehabilitated. Now, that's odd for it to be a finding that it's neutral and then to find that that affects whether he can be rehabilitated. I don't quite understand that. Well, and I would have to look at the specific language. I believe that's just cited in Rossi III, the language of the Arizona Supreme Court. But the Arizona Supreme Court had the entire transcript, had the entire record of Rossi's violations. Whether his prison record alone is neutral, I think, is what I was getting at. And I'm not positive of exactly how Marquardt is factoring that in, but I thought it was just relating to the prison record, whether that's neutral. And then the potential for rehabilitation involves other things. And certainly he provided extensive testimony. And I would like to make that point regarding, again, Rossi's counsel has suggested that he was denied expert assistance. Again, there were seven experts. Three experts provided affidavits at the post-conviction stage. Rossi alleges in the briefs that he discounts testimony from Dr. Nash and said, well, he's just a prison psychiatrist. Dr. Nash is a neuropsychiatrist. He testified at Rossi's request. Rossi's counsel asked him to testify at the second resentencing. He also provides an affidavit at the post-conviction proceedings. You have a report from Dr. Garcia Buñuel, the Rule 11 prescreening. You have Dr. Enos testifying. Dr. Powers' report at the second sentencing. You have testimony from Dr. Nash, which is very much along the lines of what counsel has tried to insert in the record through Dr. Strickland. Dr. Nash makes these same points regarding cocaine addiction and how that affected him. He also had testimony from Dr. Tetreault, who talked about his family background, talked about his difficult childhood in terms of his weight problems and the things that he faced as a child. Dr. Powers' report lists a head injury. I think he was hit by a garage door coming down. This is all in the record prior to the second sentencing. Dr. Strickland's affidavit makes the allegation of organic brain damage. And I think you have to also keep in mind that that's a little bit inconsistent with arguing potential for rehabilitation. The theory at sentencing, particularly in light of what the Arizona Supreme Court had said in Rossi 2, was that potential for rehabilitation is something we consider as mitigating. He never said anything in state court about organic brain damage. And I think that's a little bit inconsistent. My client has organic brain damage that he can never change. Presumably organic brain damage means permanent damage. If that's the case, then I think that undercuts your argument that he's a good candidate for rehabilitation. That's a rather broad statement, counsel. I don't think I'd go there. Certainly some people with organic brain damage are model citizens. Well, and I think the most important point is that he was examined by Dr. Powers, a neurologist, prior to trial, who said, I find no evidence of any neurological damage. That's a better place to be. That's where I'll go. Do you want to comment on the Summerlin opinion that was withdrawn? Maybe you'd rather not. Well, I certainly agree with the points that Judge Kaczynski makes. And I think there has to be some indicia of improvement. And certainly in this case, where the only transcript we're talking about, the hearing, relates is this very limited hearing. Judge Marquardt then had a month and a half, I think, to deliberate before imposing sentence. And I think that is different from the facts in Marquardt where the allegation was he made the decision over the weekend when he said that he was on drugs. But I think I would go back to the point that there's absolutely no indicia in the record in looking at what happened at the sentencing hearing that Marquardt was impaired in any way. And I guess I, again, go back to the, in my view, the independent review does take care of, to the extent there is any error, I think that is taken care of. Keep in mind, in Clemens v. Mississippi, there's a finding by the appellate court that the sentencing judge found an improper aggravating circumstance. In this case, we don't have any finding like that by the Arizona Supreme Court. There's no indication that Marquardt relied on improper aggravators. There's no indication that he kept out any evidence that should have been admitted. So I think Rossi's case is weaker than that that was rejected in Clemens v. Mississippi in terms of whether an independent review corrects an error by the sentencing court. But no matter how good the record is for the Arizona Supreme Court to review, they don't have the elements of judgment which Judge Marquardt had to wit, his ability to see the demeanor of the persons who were testifying at the sentencing hearing, the tone of their voice, the way they looked at him, the sincerity of their statements. That can never be reproduced in a transcript. Do you agree with that? Yes, I would agree. Now, the question is, does a due process clause obligate the State to present its evidence to a competent tribune, in other words, a person who can see, hear, appreciate the testimony of witnesses, regardless whether there's a de novo hearing farther up that can take a look at the transcript? Isn't that the question we have here? Well, I agree that there's a right to have your hearing before someone who is competent. But I think that's why it's important to look and say, is there any indication? And I think an indication certainly where evidence is kept out. Well, we're talking about any indication. In the record, you argue from the record, and it's a good argument, that the record itself shows that Judge Marquardt was following the testimony and heard everything. And that's certainly some evidence. But what about the evidence of the two affiants who say that he was asleep? Doesn't that create a conflict in the evidence? Well, I think that was resolved by the – this was a claim that was raised in the post-conviction proceeding, and it was not found to be precluded. And I think that finding is a factual finding by the State court. By which we are bound under AEDPA unless we find it to be objectively unreasonable. That's certainly my view, yes. Okay. I think I have it. Counsel, I'm sure that the State is concerned that a finding that Judge Marquardt was not competent to hear this case has some implications perhaps for other cases that you have. I don't know that we have any other death penalty cases, but I think the implications are those suggested by Judge Kaczynski. Because I do think it opens the door to anything else. Certainly alcohol. Any judge who's seen to have had too much to drink on a weekend. Does that open the door for every case? Do we have to go in and look? Well, I'm just raising the fact that this is a difficult position for the State, and perhaps settlement under these circumstances would be a prudent course. Well, I appreciate the suggestion. And I don't have any – I don't have anything further unless there's any further questions. I would like to just – sorry. I would like to just point out very quickly the Smith decision, the State court Smith decision, does resolve the issues regarding whether claims are precluded. Smith makes it clear that the inquiry is a decision – is a categorization decision, whether it's a type of claim that requires an on-the-record waiver. If there's been a finding of preclusion by the State court, that does – that necessarily means that that is of a claim that does not require an on-the-record personal waiver by the defendant. And that's all I have. Thank you. Thank you. Could you address the point that was made by counsel that the State habeas court determined that the competency of Judge Marquardt was not precluded, it considered the evidence, and it made a finding that Judge Marquardt was competent? And why are we not barred by AEDPA? If it applies, I know your position. Why are we not barred by AEDPA unless that is an objectively unreasonable factual determination? I think that the State court was required to hold an evidentiary hearing on this issue to further develop the record on this before we could conclude that the State court's finding was reasonable. Why? Why wasn't a review of the transcript, of those 80 pages of transcript, where the judge intervened and asked questions and ruled on objections, why isn't that sufficient evidence upon which to make a determination which doesn't have to be correct? It can even be wrong under Andrade. But the question is, is it objectively unreasonable? Is there objectively no reasonable basis for the determination of the State court? I think if there's an allegation that a judge fell asleep during the proceedings that was supported with an affidavit, and that the judge was under, was addicted to marijuana at the time of the hearing, I think that the State court's finding without an evidentiary hearing is objectively unreasonable. Do you have a Supreme Court case that tells us that? I think the Bracey case would indicate that there was enough in the record here to raise questions, the 9-0 opinion by the Supreme Court in Bracey. Well, I circle back to whether the, quote, finding of competency is a mixed question of law and fact, not only for the defendant but for the judge. I do think it is a mixed question of law and fact. And I would like to address some of the points that the appellees made. I think they demonstrated a historic confusion between intelligence and mental illness. Let me stop you there. If the issue is whether the judge was asleep, is that a mixed question of law and fact or is that a question of fact? That would be a question of fact. In addition, the appellees refer to Dr. Powers as having examined Mr. Rossi. Dr. Powers is a neurologist. His examination was very limited. He looked at Mr. Rossi to determine whether he had a seizure disorder or epilepsy, a neurologist and a neuropsych. Their ---- Does it show in the record what tests he conducted? What Dr. Powers conducted? I believe ---- I don't know. Didn't he review an electroencephalogram? He did, but that ---- He didn't do the electroencephalogram, but he reviewed it. Correct. And many of the experts that the State discusses never examined Mr. Rossi. They were prison psychiatrists who had interactions with him, but there was only Dr. Tatro and Dr. Powers who examined Mr. Rossi. And then Dr. Garcia-Bunel did a very limited examination for purposes of Rule 11, but those examinations do not go to ---- are not the same as neuropsych examinations. And we point that out on pages 13 and 14 of our reply brief. Overshadowing all the issues discussed today is the undisputed fact that Mr. Rossi was sentenced to death under a sentencing scheme the Supreme Court found unconstitutional in Rayne. Rossi raised this issue in his case on appeal. However, in light of Summerlin, Mr. Rossi is barred from obtaining relief from his unconstitutional sentence. The issues raised today, alone or separately. Well, it's not unconstitutional after Summerlin. You believe it's unconstitutional. It's still unconstitutional. It doesn't apply retroactively. That's right. But the issues presented today are enough for this Court to warrant relief. Very briefly, I would just like to add that under Garceau and Gonzalez, the petition that Mr. Rossi filed was an actual application for habeas corpus relief in the Federal Court. And under Garceau, because a petition was filed the day before the AEDPA went into effect, the AEDPA does not apply to Mr. Rossi's case. Thank you. Thank you very much. Our last case will be Mark Submitted. And I want to thank both counsels for an excellent oral argument. And this case, this Court will stand adjourned.
judges: B.fletcher, Hawkins, Bea